UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WALTER G. GOODRICH, ET AL        CIVIL ACTION NO. 17-cv-0610

VERSUS                           MAGISTRATE JUDGE HORNSBY

USA

**MEMORANDUM RULING**

**Introduction**

Henry Goodrich died owing the IRS significant sums of money. At the time of his death, he had a usufruct over assets that included cash and mineral interests. His three children were the naked owners of those assets. A few years after Henry died, the IRS issued levies against funds in his estate's bank accounts and revenues generated by the mineral interests. The IRS applied the seized funds to Henry's tax debts.

Henry's children argue that they became 100% owners of the assets subject to the usufruct at the time of Henry's death. They filed this civil action and alleged that the IRS effected a wrongful levy of their property. They demand that the IRS return much of the money it seized. Before the court are (1) the United States' Motion for Partial Summary Judgment (Doc. 28) and (2) the Goodrich children's Motion for Summary Judgment (Doc. 29). For the reasons that follow, the motions are granted in part and denied in part.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000). The summary judgment evidence in this case consists almost entirely of documents and undisputed facts. The parties just disagree as to the legal implications of the factual record.

**Relevant Facts**

Henry and Tonia Goodrich were married and had three children. Those children—Gil, Henry Jr., and Laura—are the plaintiffs in this case. Henry and Tonia owned community property during their marriage. The community included a family home and the furniture and effects in that home. Relevant to this case, it also included (1) oil and gas interests, (2) common stock and options to buy stock in Goodrich Petroleum Corporation, and (3) certain personal property and furnishings not located in the family home that are referred to as the "Townhome Personal Property."

Tonia died in 2006. Her will left Henry all of her community interest in the family home and the furniture and effects in that home (making Henry the 100% owner of those assets). She left all of her other property to her three children, subject to a usufruct in favor of Henry that she confirmed for his life. That other property included her community interest in the mineral interests, stock and stock options, and the Townhome Personal Property. Accordingly, Henry owned his one-half community interest in those assets and

held a usufruct for life over Tonia's former interest. The three children became the naked owners of Tonia's former interest in those assets.

Tonia's succession was completed in 2015 (after Henry died), when a judgment of possession was entered that formally implemented the terms of Tonia's will. Attached to the judgment was a detailed descriptive list of assets and liabilities. Among the assets were the mineral interests, stock rights, and Townhome Personal Property. Paragraph 6(a) of the judgment stated that Henry was placed into possession of his one-half interest in all community property. Paragraph 6(b) placed him in possession of Tonia's interests in the household effects and personal property in the family home. Paragraph 6(c) granted Henry a usufruct for life over the rest of Tonia's estate. Paragraph 7 stated that the three children were placed into possession, one-third each, of the naked ownership of the property over which Henry held the usufruct.

Henry's 2012 federal income tax return resulted in an assessment of income tax of $214,806. The 2013 return resulted in an assessment of income tax of $312,078, and the return for 2014 (the year Henry died) resulted in an assessment of $38,029. These amounts were also subject to interest and penalties. Only the 2012 tax liability was assessed by the IRS before Henry died on March 26, 2014. The balance of his 2012 tax liability as of the date of death was $238,921.75. Interest and penalties continued to accrue until the 2012 liability was satisfied by a final payment on April 27, 2018. Other amounts remain due.

Gil Goodrich, as executor of Henry's estate, opened a succession checking account and made an initial deposit of approximately $54,000 in April 2014. Those funds came from the closing of Henry's account at a local bank. All estate funds and expenses have

passed through this account, with the exception of $11,200 in a savings account that will be discussed below. Revenue for the checking account has come from the mineral interests, which generated regular payments, and the sale of estate property. An annual accounting reflected the sale of Henry's residence, satisfaction of a related bank loan, proceeds of the sales of personal property items, and satisfaction of various other bank loans and a state tax lien. The executor's attorney issued a letter in 2015 to the IRS and other potential creditors of the succession. The letter advised that it appeared the succession would be insolvent, with amounts claimed by creditors to "far exceed the value of the remaining assets." The letter explained that part of the reason for the insolvency was that Henry held only a usufruct over many assets, and that right terminated at his death.

The mineral interests that Henry and Tonia owned continued to produce revenues after Tonia's death. The revenues were paid to Henry (half as full owner and the other half as usufructuary) until the time of his death. Gil Goodrich testified at a deposition that the mineral interests included both royalties and working interests (which are subject to a share of operating costs). After Henry died, all revenue and expenses related to the interests flowed in or out of the estate checking account. In 2016, for example, there were $19,649.69 in revenues deposited, but there was $5,782.32 in expenses, for a net of $13,866.87. One half of that amount would be attributable to Henry's estate, and the other half would be attributable to the three Goodrich children, but all the funds remained in the estate account. Gil's records reflect that net oil and gas revenues of $138,669.51 passed through the succession checking account between March 26, 2014 and May 8, 2017.

The stock and options that Henry and Tonia owned were in Goodrich Petroleum Corporation, which was traded on the New York Stock Exchange. When Tonia died, she owned in community with Henry 28,925 shares, with a total value of $944,980 ($32.67 per share) and options to acquire an additional 22,000 shares, less option cost of $2.625 per share. After Tonia died, Henry sold 24,333 shares for $720,094 (of which $360,047 was attributable to the half interest in the shares of which his three children were naked owners). Henry also exercised options and sold 12,000 option shares in various transactions that yielded a total of $137,820, with $68,910 of that revenue attributable to the half interest of which his children were the naked owners. (Henry died possessing 19,495 shares of the stock, but Goodrich Petroleum Corporation filed Chapter 11 in 2016; those shares were cancelled and became worthless.) The children claim ownership of $428,957 by virtue of the termination of Henry's usufruct over the cash proceeds of the stock and options.

A Goodrich estate sale of personal property was held in 2016. The items sold came from three categories. The first category included items from Henry's home. Those items had belonged 100% to Henry when he died. The net proceeds of that category was $122,753.70. The second category was items from the Townhome Personal Property, which generated net proceeds of $35,375.22. Henry's estate owned a half interest in those townhome proceeds, with the three children/naked-owners owning the other half interest ($17,687.61). Gil Goodrich, as executor, deposited the entire proceeds of these first two categories into the estate checking account.

The third category of property sold consisted of disputed-ownership items. Some years after Tonia died, Henry married Laurice W. Rountree, who became Laurice W.

Goodrich. Henry and Laurice had a separate property regime. Laurice claimed ownership of some items that were sold at the estate sale, but the estate disputed her claim. Those disputed items generated net proceeds of $20,519.57, and Gil deposited those funds in the estate checking account. Laurice also claimed ownership of a living room rug ($10,000) and a master bathroom towel rack ($1,200) that were sold directly to the buyer of Henry's home. Gil, as Henry's executor, established a succession savings account for the limited purpose of holding the disputed $11,200.

The IRS began to issue levies in 2016. It first sent notices of levy to the seven oil and gas operators who had paid revenues to Henry based on the mineral interests. The operators paid 100% of future revenues to the IRS. Plaintiffs represent that the IRS collected $34,565.92 from the operators pursuant to those levies. They contend that one half of that amount ($17,282.96) is attributable to the interest that became owned by the children after Henry's death.

The IRS sent a notice of levy to J.P. Morgan Chase Bank, NA in 2017. The levy listed two account numbers. One was for the succession checking account and the other was for the succession savings account. An attorney for Henry's estate argued that there were no funds available for distribution to the IRS (or other creditors) because the children/naked owners owned all of the succession's cash. The IRS did not release its levy, and in May 2017 it obtained $239,926.75 from the checking account and $11,203.08 from the savings account. The funds were posted as a payment levy against Henry's 2012 federal income tax liability. After application of the funds obtained by the IRS by its levies (that are contested here), Henry's remaining tax debt exceeds $470,000.

**No Procedural Challenges**

Plaintiffs' first amended complaint included allegations that the levies were wrongful because the IRS did not conduct a thorough investigation required by law, incorrectly identified the taxpayer, used an incorrect address for the estate, and improperly identified the succession accounts. Doc. 1, ¶¶ 13 & 32. The United States argued in its motion that its waiver of sovereign immunity does not allow a third party to challenge such procedural defects in the levy process. Plaintiffs responded that they "do not rest their claims on procedural defects in the IRS' actions." Doc. 35, p. 2. "Instead, the plaintiffs' claims are based on their assertion of ownership of the subject of the levies." Id. Accordingly, the court finds that any challenges to procedural defects are waived, and the United States is entitled to summary judgment dismissing all such claims.

**Wrongful Levy**

A lien in favor of the United States arises with respect to all property and rights to property of a taxpayer upon failure to pay a tax liability after demand. 26 U.S.C. § 6321. The IRS has broad authority to impose levies on property and rights to property of taxpayers upon which liens have attached. 26 U.S.C. § 6331(a). But that power is not unlimited. For example, "a levy is wrongful if imposed upon property in which the taxpayer had no interest at the time the lien arose…." Oxford Capital Corp. v. United States, 211 F.3d 280, 283 (5th Cir. 2000).

Congress, in 26 U.S.C. § 7426, has waived the sovereign immunity of the United States for suits claiming wrongful levy and has allowed persons other than the taxpayer to file suit against the United States for wrongful levy. "If a levy has been made on property

or property has been sold pursuant to a levy, and any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States." 26 U.S.C. § 7426(a)(1). The court may grant relief that includes an injunction, return of property, or damages. § 7426(b). Interest shall be allowed at a statutory rate from the date the Secretary receives the money wrongfully levied upon to the date of payment of such judgment. § 7426(g)(1). "For purposes of an adjudication under this section, the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed to be valid." §7426(c).

To establish a wrongful levy claim under Section 7426 a plaintiff must show (1) that the IRS filed a levy with respect to a taxpayer's liability against property held by the non-taxpayer plaintiff, (2) the plaintiff had an interest in that property superior to that of the IRS and (3) the levy was wrongful. Oxford, 211 F.3d at 283, citing Texas Commerce Bank–Fort Worth v. United States, 896 F.2d 152, 156 (5th Cir.1990).

To prove that a levy is wrongful, (1) a plaintiff must first show some interest in the property to establish standing, (2) the burden then shifts to the IRS to prove a nexus between the property and the taxpayer, and (3) the burden then shifts back to the plaintiff to prove the levy was wrongful, e.g., that the property in fact did not belong to the taxpayer. Oxford, 211 F.3d at 283, citing Century Hotels v. United States, 952 F.2d 107, 109 (5th Cir.1992). "State law determines the property interests to which federal tax liens attach."

United States v. Davis, 681 Fed. Appx 338, 341 (5th Cir. 2017), citing Aquilini v. United States, 80 S.Ct. 1277, 1280 (1960).

**Analysis**

    A. **Overview of Usufruct Rules**

"The right of usufruct expires upon the death of the usufructuary." La. Civ. Code Art. 607. The plaintiffs contend that money seized by the IRS in 2016 and 2017 belonged to them because Henry's usufruct terminated when he died in 2014, which immediately vested the children/naked-owners with ownership of Tonia's half of the former community. A review of Louisiana law on usufruct and a provision of Tonia's will provide the background for the dispute.

The rights of a usufructuary "vary with the nature of the things subject to it as consumables or nonconsumables." La. Civ. Code Art. 535. The usufructuary becomes the owner of consumables, such as money, and may consume or sell them as he sees fit. Art. 536. With respect to consumable things, "At the termination of the usufruct he is bound either to pay to the naked owner the value that the things had at the commencement of the usufruct or to deliver to him things of the same quantity and quality." Art. 538.

"Nonconsumable things are those that may be enjoyed without alteration of their substance, although their substance may be diminished or deteriorated naturally by time or by the use to which they are applied, such as lands, houses, shares of stock, animals, furniture, and vehicles." La. Civ. Code Arts. 537. "If the things subject to the usufruct are nonconsumables, the usufructuary has the right to possess them and to derive the utility, profits, and advantages that they may produce, under the obligation of preserving their

substance." Art. 539. "He is bound to use them as a prudent administrator and to deliver them to the naked owner at the termination of the usufruct." Id.

"The usufructuary may not dispose of nonconsumable things unless the right to do so has been expressly granted to him." La. Civ. Code. Art 568. "[T]he grantor of the usufruct, may expressly accord to the usufructuary of nonconsumables the right to dispose of them." 3 A.N. Yiannopoulos, Louisiana Civil Law Treatise: Personal Servitudes § 2:3 (5th ed.). Section 4.6 of Tonia's will gave Henry the right to dispose of nonconsumables, with the usufruct attaching to the proceeds. It stated:

> I hereby grant the usufructuary the right to dispose of nonconsumables that are subject to the usufruct, and, in the event of such disposition, the usufruct shall not terminate but shall attach to the proceeds of such disposition and the reinvestment thereof.

The only nonconsumables at issue that Henry disposed of before he died are the shares in Goodrich Petroleum. The shares were sold for cash, to which the usufruct would have attached. At the time Henry died, the mineral interests and Townhome Personal Property were still in existence.

### B. Estate Savings Account

The $11,200 deposited in the estate savings account was the subject of a dispute between Henry's estate and his second wife, Laurice. The parties eventually agreed to the terms of a settlement, but the IRS seized the $11,203.08 balance in the account before the settlement could be completed. Laurice has not intervened in this proceeding to assert a claim, and the IRS contends that the applicable period of limitations has passed.

The United States' motion challenges any claim by Henry's children that the seizure of those funds was a wrongful levy of their property. Henry's children have not presented evidence that they personally owned those funds, and they do not argue that they can base a wrongful levy claim on the seizure of those funds. The United States is entitled to summary judgment dismissing any such claim.

**C. Townhome Personal Property**

Civil Code Article 537 identifies furniture as a nonconsumable. The plaintiffs argue that the Townhome Personal Property was all considered nonconsumable things so that, upon Henry's death and termination of his usufruct, full ownership of the items was restored to them, and Henry's estate was bound to deliver the items to them. That property was, after Henry died, liquidated at the estate sale. The plaintiffs move for summary judgment on a claim that the IRS wrongfully seized their share of the proceeds generated by the sale of their property.

The United States somewhat agrees with the plaintiffs on this claim. It states in its memorandum (Doc. 28-2, pp. 6-7) that, as to the children's claim for $17,687.61 in proceeds from the sale of the personal property, "the United States does not dispute this claim to the extent the Plaintiffs meet their burden of showing that these funds were among the funds that the IRS seized from the Checking Account."

The United States makes two challenges on its "to the extent" objection. The first is an argument that the plaintiffs are not entitled to judgment unless they show that the property that yielded the $17,687.61 was the furniture and effects that were not situated at the family home (which Henry owned 100% at his death). Gil Goodrich explained in an

affidavit that separate inventories were made of Henry's personal property that had been located in the home he shared with Tonia and the other personal property that is known as the Townhome Personal Property. Items from both groups were sold at the estate sale, but the separate inventories allowed a determination of the amount of the proceeds attributable to the Townhome Personal Property. Gil testifies that one half of the proceeds of the sale of the Townhome Personal Property, $17,687.61, was attributable to the children/naked-owners. The funds, together with the other proceeds of the estate sale, were deposited in the succession checking account. The United States has not offered competing evidence to create a genuine dispute on this issue. The court finds that the children have established that the Townhome Personal Property, not property that belonged to Henry, generated the funds at issue.

The United States' second argument is that the plaintiffs must show that the funds from the Townhome Personal Property were among those seized from the checking account. It contends the plaintiffs must present "tracing evidence" on this point. The government's only authority for this alleged requirement is Bregman, Berbert & Schwartz, L.L.C. v. United States, 145 F.3d 664 (4th Cir. 1998), but that case involved the application of Maryland law regarding constructive trusts, an issue not present in this case. The evidence in this case shows that the $17,687.61, from the sale of items the United States concedes belonged to the plaintiffs, was deposited in the succession checking account. The executor kept detailed records that attributed that amount to the Townhome Personal Property. The plaintiffs have demonstrated that they are entitled to summary judgment on this claim.

### D. Mineral Interests

Civil Code Article 537 includes lands as a category of nonconsumable things, and the parties appear to agree that the mineral interests at issue are nonconsumables. Upon termination of a usufruct of nonconsumables, Article 628 provides that "full ownership is restored" and the usufructuary or his heirs are "bound to deliver the property to the owner with its accessories and fruits produced since the termination of the usufruct."

Prior to the IRS levies, revenues from the mineral interests were deposited in the estate checking account. The plaintiffs argue that they are entitled to $69,086.40, representing their one half of those net revenues. The United States does not dispute that the plaintiffs were the owners of one half of the net revenues at the time those funds passed through the succession checking account. But the United States argues that the plaintiffs are not entitled to judgment for any part of the seized bank funds because they have not shown "through competent tracing evidence that these mineral revenues were included in the seized Bank Funds."

As with the Townhome Personal Property proceeds, the court concludes such detailed tracing is not required in this case. The funds at issue were owned by the plaintiffs and were deposited in the succession checking account, for which the executor kept detailed records that reflected the amount of funds attributable to the mineral revenues that were in the account. The plaintiffs have demonstrated that they are entitled to summary judgment on this claim.

The IRS also collected mineral revenues directly from the operators of the properties. The United States says that it and the plaintiffs should split these funds equally

and that the levies should either be released as to the one-half ownership interest of the plaintiffs or subject to an agreement under which the IRS remits half of the revenues it collects. The plaintiffs respond that this is "precisely the relief that the Naked Owners seek!" They cannot fathom why the IRS has not already delivered a check for their share of the proceeds, plus interest, and released the levies with respect to future revenues.

The plaintiffs are granted summary judgment with respect to this claim. The IRS is ordered to return the revenues attributable to the plaintiffs' interest that it has collected from the operators, plus legal interest. It is also ordered to immediately take the necessary and appropriate steps to release or modify the levies so that the operators may pay the plaintiffs directly the revenues due to the plaintiffs.

### E. Stock Proceeds

Civil Code Article 537 includes shares of stock among the properties that are considered nonconsumable things. Under the terms of Tonia's will, when the stock and options were sold, Henry's usufruct then attached to the cash proceeds he received. Civil Code Article 536 states that money is a consumable thing. The plaintiffs agree that, after the stock was sold, the usufruct became a usufruct of consumables. When Henry died, the obligation of the estate was governed by rules applicable to consumables, which are different than the rules for the nonconsumable mineral rights and personal property addressed above.

At the termination of a usufruct of consumables, the usufructuary is "bound either to pay to the naked owner the value that the things had at the commencement of the usufruct or to deliver to him things of the same quantity and quality." La. Civ. Code Art. 538. The

plaintiffs contend that the sale of the stock and options made them the naked owners of $428,957, and they became the full owners of that amount when Henry died and his usufruct ended.

The plaintiffs argue that the IRS wrongfully seized their funds because they became the actual owners of the amount to which they were entitled at the moment of Henry's death. They point to Article 629, which states that, upon termination of the usufruct of consumables, the usufructuary "is bound to deliver to the owner" things of the same quantity or quality. The plaintiffs contend that they instantly owned the money and were entitled to its delivery. They also note that the law called them "naked owners" and not "naked creditors."

The United States does not contest the amount the plaintiffs claim in connection with the stock rights, but it contends that they merely have an unsecured claim against the estate for that amount and are not actual owners of any particular cash. Support for that position is found in a leading Louisiana treatise. "A usufruct of consumables differs from a usufruct of nonconsumables because the usufructuary acquires ownership of the things and the naked owner becomes a general creditor of the usufructuary." 3 A.N. Yiannopoulos, Louisiana Civil Law Treatise: Personal Servitudes § 1:3 (5th ed.). The treatise also states, "When the usufruct terminates by the death of the usufructuary, the debts that the usufructuary owes to the naked owner, including restoration of the value of consumables that were subject to the usufruct, are debts of the succession." Id. at n. 7. Section 6:18 of the treatise points out that the usufructuary of consumables is given an option to deliver to the naked owner consumables of the same quantity and quality or a

plaintiffs contend that the sale of the stock and options made them the naked owners of $428,957, and they became the full owners of that amount when Henry died and his usufruct ended.

The plaintiffs argue that the IRS wrongfully seized their funds because they became the actual owners of the amount to which they were entitled at the moment of Henry's death. They point to Article 629, which states that, upon termination of the usufruct of consumables, the usufructuary "is bound to deliver to the owner" things of the same quantity or quality. The plaintiffs contend that they instantly owned the money and were entitled to its delivery. They also note that the law called them "naked owners" and not "naked creditors."

The United States does not contest the amount the plaintiffs claim in connection with the stock rights, but it contends that they merely have an unsecured claim against the estate for that amount and are not actual owners of any particular cash. Support for that position is found in a leading Louisiana treatise. "A usufruct of consumables differs from a usufruct of nonconsumables because the usufructuary acquires ownership of the things and the naked owner becomes a general creditor of the usufructuary." 3 A.N. Yiannopoulos, Louisiana Civil Law Treatise: Personal Servitudes § 1:3 (5th ed.). The treatise also states, "When the usufruct terminates by the death of the usufructuary, the debts that the usufructuary owes to the naked owner, including restoration of the value of consumables that were subject to the usufruct, are debts of the succession." Id. at n. 7. Section 6:18 of the treatise points out that the usufructuary of consumables is given an option to deliver to the naked owner consumables of the same quantity and quality or a

sum of money representing the value of the consumables. This option on behalf of the usufructuary/estate undermines the contention by the naked owners that they immediately became the owners of specific cash upon Henry's death.

There is not much jurisprudence on the issue, but In Re Succession of Catching, 35 So.3d 449 (La. App. 2d Cir. 2010) is relevant. When Mrs. Catching died, her son became the naked owner of her interest in the community, and her husband James became the usufructuary of that interest. Mrs. Catching's share of the community was valued at over $400,000. James later executed a will that left a bequest to a church of $100,000, with the remainder of his property to go to his son, and instructions that all administration debts be paid before any legacies were distributed.

When James died, his total assets were only $330,000. The debts listed in the succession included his son's claim for more than $400,000 based on termination of the usufruct. The church sued in an effort to collect its $100,000 legacy. Notably, all of the mother's community property that was subject to the usufruct was classified as consumables, as it consisted solely of money, bank accounts, and the like. The court denied the church's claim. It cited jurisprudence that stated the obligation of the usufructuary in such cases "is in the nature of a debt owed by the succession to the owners." The court held: "The usufruct terminated upon James' death and became a debt owed by the succession to the naked owner." Catching, 35 So.3d at 451.

This court is persuaded that the Goodrich children/naked-owners had a claim against the estate in connection with the cash Henry received for the stock, but they did not immediately become the owners of any particular cash at the moment of Henry's death.

The obligation to the naked owners was a debt or obligation of the estate that was subject to administration and payment only upon completion of the succession with adequate funds available to satisfy the obligation. The plaintiffs were, therefore, in the nature of unsecured creditors of the succession with respect to this claim. The levy of the succession checking account did not, with regard to this amount, seize property that the plaintiffs actually owned at that time, so the levy was not wrongful with respect to this issue. The United States is entitled to summary judgment with respect to this claim.

**Conclusion**

The United States' Motion for Partial Summary Judgment (Doc. 28) is granted in part by dismissing all claims based on procedural defects and dismissing the plaintiffs' claims based on seizure of the proceeds of the stock and options; it is denied in all other respects. The Goodrich children's Motion for Summary Judgment (Doc. 29) is granted in part by awarding them $17,687.61 in connection with the Townhome Personal Property, $69,086.40 in connection with the mineral revenues in the checking account, and half of the mineral revenues the IRS has collected directly from the operators. The awards bear legal interest. The IRS is also directed to promptly take all necessary and appropriate steps to release or modify the levies so that the operators may pay the plaintiffs directly the shares of revenues that they own. The Goodrich children's motion is otherwise denied. This ruling appears to resolve all claims asserted in the complaint, so counsel are directed to prepare a proposed judgment in accordance with the ruling and submit it to the court within 30 days.

THUS DONE AND SIGNED in Shreveport, Louisiana, on this 17th day of March 2020.

Mark L. Hornsby
U.S. Magistrate Judge